UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

    -v. -                          :

**ANGELA HUANG, *et al.*,**              :      **06 Cr. 1006 (KMK)**

       Defendant.               :

- - - - - - - - - - - - - - - - - x


    **PLEASE TAKE NOTICE** that upon the annexed motion and memorandum of law, and the exhibits attached thereto, the defendant herein, **BOUHARI ADOYI**, will move this Court, before the **HONORABLE KENNETH M. KARAS**, United States District Judge for the Southern District of New York, at the United States Courthouse located at 500 Pearl Street, New York, New York, at a time to be designated by the Court, for an Order, pursuant to Rule 12 and Rule 41 of the Federal Rules of Criminal Procedure, suppressing physical evidence and statements obtained from the defendant in violation of the Fifth Amendment, or granting an evidentiary hearing on this motion, and granting such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          March 2, 2007

                          Respectfully submitted,
                          LEONARD F. JOY, ESQ.
                          Federal Defenders of New York

             By:   _____

                  **CHRISTOPHER A. FLOOD, ESQ.**
                  Attorney for Defendant
                   **BOUHARI ADOYI**
                  52 Duane Street - 10th Floor
                  New York, New York 10007

TO:  **MICHAEL J. GARCIA, ESQ.**
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007
     Attn:     **STEVE LEE, ESQ.**
               Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

     -v. -                                :    **A F F I R M A T I O N**

**ANGELA HUANG, _et al._,**                 :    06 Cr. 1006 (KMK)

       Defendant.                      :

- - - - - - - - - - - - - - - - - x

    CHRISTOPHER A. FLOOD, ESQ., being an attorney duly admitted to practice law in this Court and in the Superior Court of the District of Columbia, hereby affirms under penalty of perjury:

1.    I am counsel for the defendant BOUHARI ADOYI in the above-captioned matter, and as such I am fully familiar with the allegations and circumstances of this case.

2.    This affirmation is submitted in support of Mr. Adoyi's Motion to Suppress Evidence Obtained in Violation of the Fourth and Fifth Amendments, regarding evidence and statements obtained subsequent to Mr. Adoyi's arrest on July 26, 2006.

3.    This affirmation is based on Federal Rule of Criminal Procedure 16 discovery materials provided by the government, as well as Mr. Adoyi's declaration, dated March 1, 2007.

4.    Mr. Adoyi was charged in violation of 18 U.S.C. § 371 in a complaint dated July 26, 2006. See Exhibit A. An Indictment was filed on October 26, 2006. See Exhibit B.

5.    In the early afternoon of July 26, 2006, Mr. Adoyi was arrested at his workplace, A&B Trading, located at 146 West 29th Street, New York, NY.  This represented the first time Mr. Adoyi had ever been arrested.

6.    Mr. Adoyi was born in the West African nation of Togo, and grew up speaking Tem-Kotokoli.  French is also spoken in Togo, and Mr. Adoyi is fluent in that language.  Mr. Adoyi's grasp of English, however, is tenuous, particularly as it applies to reading and writing.  At the time of his arrest, Mr. Adoyi had been

in the United States for less than three years.  What
of the English language he knew he learned during this
brief period. <u>See</u> Declaration of Bouhari Adoyi,
attached at Exhibit A, at ¶¶ 3-5.

7.   While in custody, Mr. Adoyi was questioned by agents of
the United States Secret Service ("USSS").  At no time
during his interrogation was he provided an
interpreter.  <u>See</u> Exhibit A at ¶ 6.

8.   The government claims that, sometime during this
questioning, Mr. Adoyi consented to the search of the
premises at A&B Trading.  <u>See</u> Certified Inventory of
Evidence, attached at Exhibit B.

9.   Mr. Adoyi did not consent to the search of A&B Trading.

10.  Even if the government somehow is able to establish
that its agents believed they had secured Mr. Adoyi's
consent to search the premises of A&B Trading, the
totality of the circumstances, including the number of
officers present, the presence of at least one drawn
weapon, the weakness of Mr. Adoyi's English skills, Mr.
Adoyi's utter ignorance of the limits of police power
under the laws and Constitution of the United States,
as well as the conduct of the agents in the course of
their efforts to obtain Mr. Adoyi's consent,
demonstrate that Mr. Adoyi's consent was not freely
given.

11.  After the premises were searched, Mr. Adoyi was taken
alone to another location.  He did not know where he
was going, and by that time had spent a significant
amount of time in handcuffs and was in physical pain
during the transport.  Once at that location he was
interrogated by a government agent.  As with all
previous questioning of Mr. Adoyi, this interrogation
was conducted in English without an interpreter.  <u>See</u>
Exhibit A at ¶ 11.

12.  At this interrogation, Mr. Adoyi was asked to sign a
document entitled "Warning and Consent to Speak." <u>See</u>
Exhibit C. This document was not translated.  At the
time he signed this document, Mr. Adoyi did not
understand it as a waiver of his right to refuse to
speak with the agent without first speaking with a
lawyer.  Moreover, this document was signed hours after
interrogation of Mr. Adoyi had already been inaugurated
without the benefit of being warned of his right not to
participate as set forth in <u>Miranda v. Arizona</u>, 384

U.S. 436 (1966) and its progeny.

13. For the reasons stated in Mr. Adoyi's accompanying memorandum of law, neither Mr. Adoyi's consent to search the premises at A&B Trading, nor his waiver of his Fifth Amendment right to remain silent was lawfully obtained. Accordingly, the fruits of these unlawful incidents are inadmissable in evidence.

WHEREFORE, it is respectfully requested that the relief sought herein be granted with such other and further relief as my be considered just and proper.

Dated:    New York, NY
          March 2, 2007

Sincerely,

Christopher A. Flood, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

          -v. -                       :

**ANGELA HUANG, *et al.*,**           :        **06 Cr. 1006 (KMK)**

          Defendant.                  :

- - - - - - - - - - - - - - - - - x


**DEFENDANT BOUHARI ADOYI'S MOTION AND MEMORANDUM
IN SUPPORT THEREOF TO SUPPRESS EVIDENCE OBTAINED
IN VIOLATION OF THE FOURTH AND FIFTH AMENDMENTS**


                              LEONARD F. JOY, ESQ.
                              Federal Defenders of New York
                              Attorney for Defendant
                                **BOUHARI ADOYI**
                              52 Duane Street - 10th Floor
                              New York, New York 10007
                              Tel.: (212) 417-8761


                              **CHRISTOPHER A. FLOOD, ESQ.**
                              <u>Of Counsel</u>


TO:  **MICHAEL J. GARCIA, ESQ.**
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007
     Attn: **STEVE LEE, ESQ.**
          Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

    -v. -                           :

**ANGELA HUANG,** *et al.,*              :      **06 Cr. 1006 (KMK)**

       Defendant.               :

- - - - - - - - - - - - - - - - - x


### DEFENDANT BOUHARI ADOYI'S MOTION AND MEMORANDUM IN SUPPORT THEREOF TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AND FIFTH AMENDMENTS

The defendant, Bouhari Adoyi, hereby moves under Federal Rules of Criminal Procedure 12(b)(3) and 41(f) to suppress evidence and statements obtained from Mr. Adoyi as the result of a search and interrogation conducted on or about July 26, 2006 by agents of the United States Secret Service ("USSS") without a valid waiver of Mr. Adoyi's Fourth or Fifth Amendment rights.


I.   <u>Mr. Adoyi Did Not Grant the Agents Consent to Search the Premises of A&B Trading</u>.

Warrantless searches are presumed to be unreasonable unless based on a narrow categorical exception, like the consent of an authorized person. <u>See</u>, <u>e.g.</u>, <u>United States v. Snype</u>, 441 F.3d 119, 130 (2d Cir. 2006). The government relies upon Mr. Adoyi's consent to justify its search of the A&B Trading premises and articles therein. The government has the burden of proving that Mr. Adoyi voluntarily consented to this search by a preponderance

of the evidence in light of totality of surrounding circumstances. See, Schneckloth v. Bustamonte, 412 U.S. 218 (1973); United States v. Calvente, 722 F.2d 1019 (2d Cir. 1983). Valid consent must be the product of a person's "free and unconstrained will." See, United States v. Arango-Correa, 851 F.2d 51, 57 (2d Cir. 1988). A person's consent is not to be lightly inferred, see, United States v. Viale, 312 F.2d 595, 601 (2d Cir. 1963), and mere acquiescence to a show of authority is insufficient to establish a valid consent. See, e.g., United States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993).

Mr. Adoyi did not grant the arresting agents consent to search the premises of A&B Trading. Mr. Adoyi did not believe that he was authorized to give consent. He was an employee of A & B Trading. He was not a leaseholder, an owner, or a manager of that enterprise. While consent to search may be given "by one with access to the area searched, and either common authority over it, a substantial interest in it or permission to exercise that access, express or implied..." United States v. Gradowski, 502 F.2d 563 (2d Cir. 1974), Mr. Adoyi did not give that consent in part simply because he did not believe that he had the authority to do so.

Even if the government somehow shows that its agents believed that Mr. Adoyi had given them consent to search the premises, the circumstances of Mr. Adoyi's arrest and questioning do not suggest such consent would have been freely-given or that reliance upon it

2

could be done in good faith.  Mr. Adoyi's inexperience with law enforcement, the presence of a drawn firearm, the large number of arresting agents, his lack of English language skills, the lack of interpretation, and the repeated requests for consent all support a finding that his will was in fact overborne.  Accordingly, the search was unlawful and the fruits of that search are inadmissible.

II.  <u>Mr. Adoyi's Statement is the Product of a Custodial Interrogation Without a Valid Waiver of His Rights Under the Fifth Amendment</u>

Mr. Adoyi was in custody at the time of his interrogation.  At no time during his questioning could Mr. Adoyi have believed that he was free to leave.  <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980).  This interrogation without a knowing, intelligent, and voluntary waiver of his right not to participate with the investigation.  The term "interrogation" refers to any conduct by the police that the police should know is likely to elicit an incriminating response from the suspect.  <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980).  In this case, Mr. Adoyi's statements were in response to direct questions by the agents, and thus were made in response to "interrogation".  Any statements made by Mr. Adoyi must therefore be suppressed as the result of a violation of the Fifth Amendment.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 479 (1966).

The government bears the burden to show that Mr. Adoyi's statements were voluntary.  <u>See</u>, <u>Lego v. Twomey</u>, 404 U.S. 477, 489

3

(1972); <u>Jackson v. Denno</u>, 378 U.S. 368, 394 (1964). The circumstances of the interrogation of Mr. Adoyi overcame what ability he had to resist, and render his statements involuntary. These statements must therefore be suppressed for all purposes, including impeachment. <u>See</u> <u>New Jersey v. Portash</u>, 440 U.S. 450, 459 (1979); <u>Mincey v. Arizona</u>, 437 U.S. 385, 398 (1978).


## Conclusion

WHEREFORE, it is respectfully requested that this Court grant a hearing to determine whether the evidence and statements obtained by the government on July 26, 2006, was obtained in violation of Mr. Adoyi's rights under the Fourth and Fifth Amendments to the United States Constitution.

Dated: New York, New York
     March 2, 2007

                      LEONARD F. JOY, ESQ.
                      Federal Defenders of New York
                      Attorney for Defendant
                        **Bouhari Adoyi**
                      52 Duane Street - 10th Floor
                      New York, New York  10007
                      Tel.:  (212) 417-8761


                      _____
                      Christopher A. Flood
                      Of Counsel

TO:  **MICHAEL J. GARCIA, ESQ.**
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York  10007
     Attn.: **STEVE C. LEE, ESQ.**
           Assistant United States Attorney

Approved: _____
STEVE C. LEE
Assistant United States Attorney

Before:  HONORABLE DEBRA C. FREEMAN
         United States Magistrate Judge
         Southern District of New York

**06 MAG      1060**

-----------------------------------X
                                    :
UNITED STATES OF AMERICA            :      COMPLAINT
                                    :
        -v-                         :      Violation of
                                    :      18 U.S.C. § 371
ANGELA HUNG,                        :
GEN LNU,                            :
MOHAMMED LNU,                       :
                                    :      COUNTY OF OFFENSE:
            Defendants.             :      NEW YORK
                                    :
-----------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        SARAH E. CANTWIL, being duly sworn, deposes and says
that she is a Special Agent with the United States Secret
Service, and charges as follows:

                           COUNT ONE

        1.    From on or about May 17, 2006, up to and including
on or about July 24, 2006, in the Southern District of New York
and elsewhere, ANGELA HUNG, GEN LNU, and MOHAMMED LNU, the
defendants, and others known and unknown, unlawfully, willfully,
and knowingly did combine, conspire, confederate, and agree
together and with each other, to commit an offense against the
United States, to wit, to violate Title 18, United States Code,
Section 2320.

        2.    It was a part and an object of the conspiracy that
ANGELA HUNG, GEN LNU, and MOHAMMED LNU, the defendants, and
others known and unknown, unlawfully, willfully, and knowingly
would and did traffic and attempt to traffic in goods and
services and knowingly did use a counterfeit mark on and in
connection with such goods and services, in violation of Title
18, United States Code, Section 2320.

                               1

## Overt Acts

3.    In furtherance of said conspiracy and to effect the illegal object thereof, ANGELA HUNG, GEN LNU and MOHAMMED LNU, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about June 7, 2006, HUNG directed an undercover Secret Service agent to the corner of 29th Street and 7th Avenue to pick up a bag filled with counterfeit handbags.

b.    On or about May 17, 2006, GEN LNU accepted payment from an undercover Secret Service agent for thirty-six counterfeit handbags.

c.    On or about May 17, 2006, MOHAMMED LNU provided an undercover Secret Service agent with a black garbage bag filled with thirty-six counterfeit handbags.

(Title 18, United States Code, Section 371.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.    I am a Special Agent with the United States Secret Service ("USSS"), and I have been personally involved in the investigation of this matter.  This affidavit is based upon my own knowledge and upon my conversations with other law enforcement agents and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.    In or about January 2005, an individual (the "CI") was referred to the USSS after having worked as a confidential informant for another law enforcement agency.  Under the supervision and direction of the USSS, the CI participated in a number of investigations concerning counterfeit goods.  The information provided by the CI in this and other investigations has proved to be accurate and reliable and has been corroborated by, among other things, video surveillance conducted by the USSS.

2

6.    On or about May 17, 2006, the CI provided an undercover USSS agent ("Agent-1") with information about counterfeit handbags that were being sold from A&B Trading, Inc. ("A&B Trading") at 146 West 29th Street in New York City.    Later that day, the CI and Agent-1 visited this location.    This visit was videotaped by Agent-1.    From my conversations with Agent-1 and from reviewing the video of this visit, I learned the following:

a.    The CI and Agent-1 arrived at 146 West 29th Street, New York, New York and entered a store at this address which had an awning that read "A&B Trading, Inc." and "Handbags & Accessories."    This store consisted of a long room that had a large number of handbags displayed.

b.    In this store, the CI introduced Agent-1 to an African male, later identified as MOHAMMED LNU, the defendant, and an Asian male, later identified as GEN LNU, the defendant.

c.    Agent-1 then engaged in a conversation with MOHAMMED LNU and GEN LNU and asked what types of handbags were available for sale.    MOHAMMED provided a booklet for Agent-1 and the CI to look through that contained pictures of different types of handbags, including handbags that resembled handbags made by Coach, Burberry, and Christian Dior.

d.    When Agent-1 asked how much it would cost to purchase handbags, MOHAMMED LNU stated that each Burberry handbag would cost $12.    When Agent-1 pointed out other handbags and asked how much these handbags would cost, GEN LNU stated that the "Coach" handbags would cost $15 and the "Christian Dior" handbags would cost $17.

e.    GEN LNU then filled out an invoice as Agent-1 asked to purchase six "Coach" handbags, twenty four "Burberry" handbags, and six "Christian Dior" handbags.    GEN LNU then told Agent-1 that the total price was $480 and that he could pick up the handbags in an hour.    MOHAMMED LNU then stated to Agent-1 that he needed to pay up front and accepted $480 in money orders from Agent-1.

f.    Approximately one hour later, Agent-1 returned to

3

A&B Trading where MOHAMMED LNU provided Agent-1 with a black garbage bag filled with the "Coach," "Burberry," and "Christian Dior" handbags that he had previously ordered.

7.      On or about June 7, 2006, the CI and Agent-1 returned to A&B Trading.  This visit was videotaped by Agent-1.  From my conversations with Agent-1 and from reviewing video from this visit, learned the following:

   a.   When the CI and Agent-1 arrived at A&B Trading, they had a conversation with MOHAMMED LNU, the defendant, and an Asian woman, later identified as ANGELA HUNG, the defendant.  After Agent-1 stated that he wanted to purchase more handbags, MOHAMMED LNU showed him the booklet of photographs of handbags that he had shown Agent-1 on May 17, 2006.

   b.   Agent-1 then pointed to handbags labeled as "Christian Dior" handbags and asked Mohammed, "Do these look like the real thing?  Do you think they'll pass?"  MOHAMMED LNU replied, "Yeah, yeah."

   c.   During this visit, Agent-1 also met HUNG who identified herself to Agent-1 as "Angela."  HUNG then pointed Agent-1 to handbags that she stated were "Prada" handbags made of "new material."  As Agent-1 was looking at these handbags, HUNG told the CI that these handbags did not come with a label, but the CI could place a label on these handbags himself.

   d.   During the course of the conversation with MOHAMMED LNU and HUNG, Agent-1 placed an order with MOHAMMED LNU for 12 "Coach" handbags, 20 "Christian Dior" handbags, and 12 "Burberry" handbags for a total of $804.  When Agent-1 attempted to pay with a money order, MOHAMMED LNU called out "Boss" to HUNG, and HUNG answered "yes," when she was asked if money orders could be used.  MOHAMMED LNU then told Agent-1 to return in a half hour to pick up the handbags.

   e.   When Agent-1 returned to A&B Trading, he had a conversation with MOHAMMED LNU and HUNG.  MOHAMMED LNU provided him with black trash bags filled with

4

the handbags that Agent-1 had ordered.  MOHAMMED
LNU and HUNG both directed Agent-1 to wait at the
corner of 29th Street and 7th Avenue so that
MOHAMMED LNU could provide Agent-1 with two more
large bags filled with the remainder of the
handbags that he had ordered.  Agent-1 then went
to the corner of 29th Street and 7th Avenue, where
MOHAMMED LNU provided him with these two large
bags.

8.    On or about July 24, 2006, Agent-1 returned to A&B
Trading.  This visit was videotaped by Agent-1.  From
conversations with Agent-1 and from reviewing the video of this
visit, I learned the following:

a.    When Agent-1 arrived at A&B Trading, he was
greeted by GEN LNU, the defendant.  GEN LNU stated
to Agent-1 that he did not have any handbags to
sell.  When Agent-1 asked him about this, GEN LNU
answered that the person who helped him buy the
handbags "had problems" and was "busted."

b.    After speaking to GEN LNU, Agent-1 then spoke to
MOHAMMED LNU, the defendant, while GEN LNU was
standing next to MOHAMMED LNU.  MOHAMMED LNU then
showed Agent-1 a booklet containing photographs of
different types of handbags, including "Gucci,"
"Coach," and other brands.  Agent-1 then placed an
order for 22 "Coach" handbags for a total of $374.
MOHAMMED LNU then wrote and provided Agent-1 with
an invoice and told Agent-1 to return in a half
hour.  Agent-1 then provided MOHAMMED LNU with two
money orders which MOHAMMED LNU then handed to GEN
LNU.

c.    Agent-1 returned approximately a half hour later
to A&B Trading.  Agent-1 engaged in a brief
conversation with MOHAMMED LNU and GEN LNU.
During this conversation, MOHAMMED LNU handed
Agent-1 a large trash bag filled with the handbags
he had ordered.  Agent-1 then spoke to MOHAMMED
LNU and GEN LNU about arranging a large purchase
of 900 handbags.  When Agent-1 asked if he could
get a discount, MOHAMMED LNU turned to GEN LNU and
asked "how much are you going to give him?"  GEN
LNU replied "15 dollars" at first and then lowered
his price to "13 dollars."  MOHAMMED LNU then told
Agent-1 that he had five different styles of

5

handbags that he could sell to Agent-1.  Agent-1 told MOHAMMED LNU and GEN LNU that he would come back in two days to purchase the handbags.

9.    In or about late June 2006, I learned through a search of a law enforcement database that A&B Trading, Inc. at 146 West 29th Street was owned by an individual named "Angela Hung."

10.    In or about late July 2006, a small sample of counterfeit handbags purporting to be Burberry, Coach, and Christian Dior handbags that were purchased on May 17, 2006 and June 7, 2006 by Agent-1 at A&B Trading were provided to representatives of Burberry, Coach, and Christian Dior respectively.  The representatives of Burberry, Coach, and Christian Dior certified that the handbags that were purchased by Agent-1 on these dates were counterfeit and infringed upon the trademarks of Burberry, Coach, and Christian Dior.  These representatives also certified that authentic versions of these bags retailed in excess of two hundred dollars.

WHEREFORE, deponent prays that warrants be issued for the arrest of ANGELA HUNG, GEN LNU, and MOHAMMED LNU, the defendants, and that they be arrested, imprisoned, or bailed, as the case may be.

_Sarah E. Cantwil_
SARAH E. CANTWIL
Special Agent
United States Secret Service

Sworn to before me this
26th day of July, 2006

S/ _Debra Freeman_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

Debra Freeman
United States Magistrate Judge
Southern District of New York

6



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED

OCT 2 6 2006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - v -    :    **INDICTMENT**

ANGELA HUANG,    :    06 Cr.
    a/k/a "Angela Hung,"
    a/k/a "Angela Lu,"    :
ZHI JUN HUANG,
BOUHARI ADOYI,    **06 CRIM. 1006**
FUYIN HUANG,    :

        Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JUDGE KARAS

## COUNT ONE

The Grand Jury charges:

1.    From on or about May 17, 2006, up to and including on or about July 26, 2006, in the Southern District of New York and elsewhere, ANGELA HUANG, a/k/a "Angela Hung," a/k/a "Angela Lu," ZHI JUN HUANG, BOUHARI ADOYI, and FUYIN HUANG, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other, to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 2321.

2.    It was a part and an object of the conspiracy that ANGELA HUANG, a/k/a "Angela Hung," a/k/a "Angela Lu," ZHI JUN HUANG, BOUHARI ADOYI, and FUYIN HUANG, the defendants, and others known and unknown, unlawfully, willfully, and knowingly would and

d.j traffic and attempt to traffic in goods and services and use a counterfeit mark on and in connection with such goods and services, in violation of Title 18, United States Code, Section 2320.

## Overt Acts

3.    In furtherance of said conspiracy and to effect the illegal object thereof, ANGELA HUANG, a/k/a "Angela Hung," a/k/a "Angela Liu," ZHI JUN HUANG, BOUHARI ADOYI, and FUYIN HUANG, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

> a.    On or about June 7, 2006, ANGELA HUANG directed an undercover Secret Service agent to the corner of 291 Street and "" Avenue to pick up a bag filled with counterfeit handbags.
>
> b.    On or about May 17, 2006, ZHI JUN HUANG accepted payment from an undercover Secret Service agent for thirty-six counterfeit handbags.
>
> c.    On or about May 17, 2006, ADOYI provided an undercover Secret Service agent with a black garbage bag filled with thirty-six counterfeit handbags.
>
> d.    On or about July 26, 2006, FUYIN HUANG told an undercover agent with the United States Secret

Service that a purchase of 1,020 counterfeit

handbags would cost $15,000.

Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

4.    As a result of conspiring to commit the

counterfeit goods offenses, as alleged in Count One of this

Indictment, in violation of Title 18, United States Code,

Sections 371 and 2320, ANGELA HUANG, a/k/a "Angela Hung," a/k/a

"Angela Lu," ZHI JUN HUANG, BUDHARI ADULI, and FUTIN HUANG, the

defendants, shall forfeit to the United States, pursuant to Title

18, United States Code, Section 981 a. 1 C, and Title 28, United

States Code, Section 2461, all property, real and personal, that

constitutes or is derived from proceeds traceable to the

commission of the offense.

### Substitute Asset Provision

5.    If any of the forfeitable property described in

paragraph 4, above, as a result of any act or omission of the

defendants:

> a.    cannot be located upon the exercise of due
>
> diligence;
>
> b.    has been transferred or sold to, or deposited
>
> with, a third person;
>
> c.    has been placed beyond the jurisdiction of
>
> the Court;

d.    has been substantially diminished in value;
      or

e.    has been commingled with other property which
      cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18,
United States Code, Section 982(b), to seek forfeiture of any
other property of said defendants up to the value of the above
forfeitable property.

   Title 18, United States Code, Sections 981(a)(1)(C), 371,
      Title 21, United States Code, Section 853(p), and
      Title 28, United States Code, Section 2461.)

_N. Rudy Feldman_                      _Michael J. Garcia_
FOREPERSON                             MICHAEL J. GARCIA
                                       United States Attorney

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**- v. -**

ANGELA HUANG,
ZHI JUN HUANG,
BOUDARI ADOYI,
SUTIN HUANG,

**Defendants.**

**INDICTMENT**

06 Cr.

(18 U.S.C. § 371)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

_Foreperson._

Oct 26 2006
Indictment filed
Case assigned to judge Karas
Freemu (SDJ)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                  :

     -v. -                                  :      **D E C L A R A T I O N**

**ANGELA HUANG, et al.,**                 :      **06 Cr. 1006 (KMK)**

        Defendant.                        :

- - - - - - - - - - - - - - - - - x


I, **BOUHARI ADOYI**, hereby declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that:

1.   I make this Declaration in support of a motion to suppress statements and tangible evidence taken on or about July 26, 2006.

2.   This Declaration is based on my best recollection of the events it describes. Since the only purpose of this declaration is to show that my constitutional rights were violated, I have not included every detail of what occurred.

3.   I was born in Togo, and have less than ten years of formal education. My birth language is Tem-Kotokoli. I understand this language perfectly. I also grew up speaking French. I did not speak any English until I came to the United States.

4.   Since my arrest, I have been taking English classes because my pretrial officer helped me to find a class. Before my

1

arrest, I learned what English I knew from talking with people. Before my class, I could not read or write in English very well, though I can write in French and Tem-Kotokoli.

5.    When I was arrested, I had been in the United States for less than three years. Before my arrest in this case, I had never before in my life been arrested or in any trouble with the law. I have never had any training about my rights under the laws and Constitution of the United States.

6.    After I was arrested, nobody spoke to me in French. All questions were asked of me in English. I did not understand everything that was being asked of me. The first time I got an interpreter was when I came to court the day after I was arrested.

7.    When I was arrested, there were at least ten police officers in the store. It seemed to me that the officers were angry with me, and I was very scared of them.

8.    During my arrest, I saw several officers with guns, and a gun in the hand of at least one officer. I had never seen a gun drawn before.

9.    I was handcuffed for most of the day that I was arrested. I had never been in handcuffs before, and I was very uncomfortable in handcuffs. I was kept at the store for several hours. I was questioned during this time by the police.

10.    After I was arrested, the police asked me for

2

permission to search the store. They asked me for permission several times. I did not give them permission to search the store. I am only a worker at the store, and I did not believe that I could give the police permission to search the store. I did not understand that I had the power to stop the police from searching the store.

11. Late at night, after it was dark out, I was taken from the store to a car. While in the car, my hands were cuffed behind my back and I was very uncomfortable and in pain and physically very tired. I did not know where I was being taken. We drove for what seemed like a very long time until we reached a building. We went up many floors in that building, and I was interviewed in a room. The interview took place in English. There was no interpreter.

12. I signed some papers given to me by the police, but I did not understand what they said. I do not recall ever being told that I could have a lawyer before answering any questions.

13. I believed that I had to answer the questions the police asked of me. Based on things said to me by at least one police officer, I believed that if I did not tell the police everything that I knew, I would be sent back to my country. I did not understand why I was not with the other workers from the store. I thought I was being singled out.

3

I declare under penalty of perjury that the foregoing is true and correct.

Dated:    New York, New York
          March 1, 2007

_____
**BOUHARI ADOYI**

4

# CERTIFIED INVENTORY OF EVIDENCE

SERIAL NUMBER

| EVIDENCE HELD AGAINST | ☐ SPECIMEN | CASE NO |
|---|---|---|

HUANG, A. /HUANG, F. /ADOYI, B.

OFFICE    NEW YORK FIELD OFFICE

EVIDENCE INVENTORIED BY

RANDALL FLINT

7/26/06

| SIGNATURE - SPECIAL AGENT | DATE |
|---|---|

SARAH CANTWIL

7/26/06

| SIGNATURE - WITNESS | DATE |
|---|---|

| DATE OF INVENTORY 07/26/06 | PAGE 1 OF 2 PAGES |
|---|---|

REVIEWING SUPERVISOR

PABLO A. MARTINEZ

7-26-06

| SIGNATURE | DATE |
|---|---|

I certify the evidence described in the page(s) of this inventory not otherwise disposed of per attached documentations was verified for final retention at Forensic Services Division this date.

| SIGNATURE - FORENSIC SERVICES DIVISION | DATE |
|---|---|

| ITEM NO | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | ITEMS #1-3 WERE SEIZED FROM A&B TRADING INC 146B WEST 29TH STREET, NEW YORK, NY AFTER A CONSENT SEARCH FOR THIS LOCATION WAS GRANTED BY DEFENDANT ADOYI. ITEMS INITIALED AND DATED FOR IDENTIFICATION "RF 07/26/06" BY RANDALL FLINT. | |
| 1 | 07/26/06 | 1 | BAG CONTAINING $1250 IN CASH. ONE LEATHER WALLET, NY STATE DRIVER'S LICENSE IN THE NAME OF HUANG, FU YIN. GREEN ADDRESS BOOK, BUSINESS CARDS. | NO VALUE |
| 2 | 07/26/06 | 1 | BAG CONTAINING $1000. CASH. PINK HAND BAG. | NO VALUE |
| 3 | 07/26/06 | 1 | BAG CONTAINING $30 IN $1(ONE) BILLS. | NO VALUE |
| | | | TOTAL ➡ | NO VALUE |

UNITED STATES SECRET SERVICE    This form was electronically produced via OmniForm by USSS/ADMIN/MNO/FARS    SSF 1544 03/86

FINAL BM

| CERTIFIED INVENTORY OF EVIDENCE | | | SERIAL NUMBER | |
|---|---|---|---|---|
| EVIDENCE HELD AGAINST ☐ SPECIMEN<br><br>HUANG,A./HUANG,F./ADOYI,B | | | CASE NO. | |
| | | | OFFICE<br>NEW YORK FIELD OFFICE | |
| EVIDENCE INVENTORIED BY<br><br>RANDALL FLINT                          7/26/06 | | | DATE OF INVENTORY<br>07/26/06 | PAGE  1  OF  2  PAGES |
| SIGNATURE - SPECIAL AGENT                     DATE | | | REVIEWING SUPERVISOR | |
| SARAH CANTWIL                     7/26/06 | | | FABLO A. MARTINEZ            7/26/06 | |
| SIGNATURE - WITNESS                     DATE | | | SIGNATURE                     DATE | |
| | | | I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at ☐ FSD  ☐ CFT. | |
| | | | SIGNATURE - DIVISION                     DATE | |

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| 1 | 07/26/06 | 1 | ITEM SEIZED FROM A&B TRADING INC., 146B WEST 29TH STREET, NEW YORK, NY. AFTER A CONSENT SEARCH FOR THIS LOCATION WAS GRANTED BY DEFENDANT ADOYI. ITEM INITIALED AND DATED FOR IDENTIFICATION "RF 07/26/06" BY SA RANDALL FLINT.<br><br>COMPUTER HARDRIVE SERIAL#022641566 | NO VALUE |
| | | | TOTAL ———> | NO VALUE |

UNITED STATES SECRET SERVICE                                                                 SSF 1544 (C3/86)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
FINAL.                     (C) 1 COPY TO ADMINISTRATIVE FILE 710.101
BM                         (D) 1 COPY TO WORK FILE

# CERTIFIED INVENTORY OF EVIDENCE

| | SERIAL NUMBER |
|---|---|

| EVIDENCE HELD AGAINST | ☐ SPECIMEN |
|---|---|
| HUANG A./HUANG, F./ADOYI, B. | |

CASE NO ▮▮▮▮▮

OFFICE
NEW YORK FIELD OFFICE

| EVIDENCE INVENTORIED BY | |
|---|---|
| RANDALL M. FLINT | 8/2/06 |
| SIGNATURE - SPECIAL AGENT | DATE |
| *[signature]* | |
| SARAH E. CANTWIL | |
| SIGNATURE - WITNESS | DATE |

DATE OF INVENTORY
07-26-06    PAGE   1   OF   2   PAGES

REVIEWING SUPERVISOR
PABLO A. MARTINEZ    8-2-06
SIGNATURE     DATE

I certify the evidence described in the page(s) of this inventory not otherwise disposed of per attached documentations, was verified for final retention at:   ☐ FSD   ☐ CFT

SIGNATURE   DIVISION      DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | ITEMS #1-3 WERE SEIZED FROM A&B TRADING INC., 146B WEST 29TH STREET, NEW YORK, NY. AFTER A CONSENT SEARCH FOR THIS LOCATION WAS GRANTED BY DEFENDANT ADOYI. ITEMS INITIALED AND DATED FOR IDENTIFICATION "RF 7/26/06" BY SA RANDALL FLINT. | |
| 1 | 07.26.06 | 3 | CUSTOMER BILLING ORDERS W/ "ANWAR" AND "UMARU" | NO VALUE |
| 2 | 07/26/06 | 1 | DHL ENVELOPE CONTAINING TWO (2) LOG BOOKS AND MISC. CUSTOMER RECEIPTS | NO VALUE |
| 3 | 07.26.06 | 2 | COUNTERFEIT BURBERRY WALLETS | NO VALUE |
| | | | TOTAL ⟶ | NO VALUE |

UNITED STATES SECRET SERVICE

SSF 1544 (03-86)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710-101
(D) 1 COPY TO WORK FILE

FINAL
BM

# WARNING AND CONSENT TO SPEAK

## WARNING OF RIGHTS          ADD ME CONSENT

You must understand your rights before we ask you any questions.

You have the right to remain silent.

Anything you say can be used against you in court, or other proceedings.

You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time. You also have the right to stop the questioning at any time until you talk to a lawyer.

I have read this statement of my rights and it has been read to me, and I understand what my rights are.

Date    07 - 26 - 06

Time    10.11 PM.                                              Signature

## WAIVER

I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my right to remain silent and my right to have an attorney at this time. I am willing to make a statement and answer questions.

Date    07 - 26 - 06

Time    10.11 P.m.                                             Signature

## CERTIFICATION

I hereby certify that the foregoing Warning of Rights and Waiver were read by me to the above signatory, and that he also read it and has affixed his signature hereto in my presence.

Todd Bratz
Witness                                                        Signature

Witness

AFFIDAVIT          ADOYI STATEMENT

United States of America

<u>Southern</u> District of <u>New York</u>          File No. _____

I <u>Bouhari Adoyi</u>, stated that I have been advised by SA <u>Todd Bratz</u>, United States Secret Service, that under the provisions of the Constitution I have certain rights: The absolute right to remain silent, and that anything I say can be used against me in the court of law or any other proceedings; that I have the right to consult with an attorney before answering any questions or making any statements, and that if I cannot afford an attorney and want one, that one can be appointed for me before I say anything; and if I decide to make any statements now, without an attorney present, I have the right to stop the questioning at any time.

Knowing and understanding these rights, I hereby make the following statement:

As ~~Jue to~~ I, Todd Bratz, am writing this statement for Bouhari Adoyi. Bouhari Adoyi requested that I write this statement for him because he does not write in English well. The following statement is a transcription of Adoyi's words.

I have worked for A+B Trading Company at 146 W. 29TH St in New York since August of 2004. I was hired by and continue to work for a Chinese woman named Angela. There is another Chinese man

I have read the foregoing statement consisting of _1_ page(s). I have been given an opportunity to make corrections. I fully understand this statement and it is true and correct to the best of my knowledge.                    ↳front and back A.A.          over

I made this statement freely and voluntarily, without any threats, rewards or promises of immunity in return for it.

Subscribed and sworn to before
me this day _7/26_, 20_06_,
at _US Customs ST Region, NY_

_____A.A._____
Signature

Special Agent T          Authority to Administer Oath.
Title                    Section 303, Title 5, U.S.C.

Witnessed:

_Todd Bratz_  Todd Bratz  Special Agent    07/26/06.

named Raymond, and a mexican named Joel. When the police and US Secret Service came to A+B Trading today, I was working with Raymond and Joel. At A+B trading my job is to take care of customers, fix the boxes of merchandise in the store, and get the fake merchandise from the storage room on the second floor of 146 w 29TH st. When a customer orders those items

When I began working at A+B Trading, Raymond showed me the keys to the second floor storage room, of 146 w 29TH St. He showed me this storage room where the fake merchandise is kept. This fake merchandise includes fake purses, bags, and women's wallets. I do not know where this fake merchandise comes from, but I know this merchandise is delivered to A+B Trading by a korean or chinese man driving a light colored truck.

A set of keys were found in A+B Trading and were shown to me. I was told by the US Secret Service agents that they have seen me go into the entrance of 146 w 29TH St where the elevators are located. I showed the US Secret Service agents the door of the storage room where the fake merchandise is kept on the second floor of 146 w 29th st

Raymond and Angela are only two people who handle the money from customers. Angela pays me every two weeks. I earn $55 each day.

I know that pieces of paper with pictures of the fake merchandise exists. This pictures are used for customers to choose what they would like to buy.