_____
_____

November 21, 2007

**By Hand & Electronic Filing**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:     **United States v. Huang**
        **06 Cr. 1006 (KMK)**

Dear Judge Karas:

        I write in response to the Government's letter of November 8, 2007 opposing Bouhari Adoyi's request for a <u>Franks</u> hearing.

        The Government argues that even if Mr. Adoyi is correct that Special Agent Sarah Cantwil, or other members of the Secret Service, made false statements in connection with the affidavit in support of the search warrant for a room on the second floor of the India Building ("second floor room"), the warrant is still valid based on the remaining information in the affidavit.

        The Government is incorrect.  The remaining information in the affidavit relating to the second floor room is also tainted, and should be struck, because it too contains misleading information and was gathered by unconstitutional means.  Accordingly, the Court should proceed with its previously stated intention of holding a hearing.

<u>**The Search Warrant Affidavit**</u>

        Agent Cantwil submitted her affidavit in support of the search warrant for the second floor room following the search of A&B Trading's main premises and the arrest of Mr. Adoyi and others.  (Govt. Ex. A, "Aff.").  Prior to the search of A&B Trading, and the arrest and interrogation of Mr. Adoyi at A&B Trading, Agent Cantwil and other members of the Secret Service were not aware that any incriminating evidence was located on the second floor of the India Building.  Indeed, while they suspected that counterfeit bags were stored in the India Building, they believed them to be on the fourth floor.  (June 5th Tr. 9, 42).  The reasons for that

The Honorable Kenneth M. Karas                     November 21, 2007
United States District Judge                        Page 2

**Re:**    **United States v. Huang**
           **06 Cr. 1006 (KMK)**

belief were unexplained at the hearing.

The affidavit summarized the investigation leading up to the day of the arrest, including several purchases of counterfeit bags by an undercover agent with the assistance of a confidential informant. (Aff. ¶¶ 6-15). None of the information provided in the affidavit concerning events prior to the day of the arrest, however, contained any basis for searching the second floor room.

With respect to the basis for probable cause to search the second floor room, Agent Cantwil asserted three grounds: (1) that following Mr. Adoyi's arrest at A&B Trading, he told agents that there was a room on the second floor next door "where counterfeit bags and presses used to manufacture counterfeit bags were stored (Aff. ¶ 16); (2) that Mr. Adoyi then showed the agents the second floor room (Aff. ¶ 17); and (3) that the agents later spoke to the owner of the India Building and confirmed that the second floor room that Mr. Adoyi had showed them was leased by A&B Trading (Aff. ¶ 18).

The Government is correct that merely excising the false statements from the affidavit regarding the manufacturing presses does not defeat probable cause. The remaining information regarding the second floor room must also be stricken, however, because it too is misleading and is entirely derived from violations of Mr. Adoyi's constitutional rights. Because each of the grounds for probable cause is based on either a false statement or a violation of Mr. Adoyi's constitutional rights, the evidence recovered from the second floor room should be suppressed.

## Discussion

The purpose of the exclusionary rule is to deter police misconduct. See United States v. Reilly, 76 F.3d 1271, 1281 (2d Cir. 1996) citing United States v. Leon, 468 U.S. 897 (1984). In evaluating a motion to suppress based on tainted information in a warrant affidavit, courts should make a case-by-case determination to ensure that the "purposes of the exclusionary rule are served." Id.

Under Franks v. Delaware, 438 U.S. 154, 155-56 (1978), a defendant is entitled to an evidentiary hearing upon a showing that a false statement was intentionally or recklessly included in a warrant affidavit and that the false statement was necessary to establish probable cause for the issuance of the warrant. False statements, however, are not the only category of tainted statements that should be stricken from a warrant affidavit. See Reilly, 76 F.3d at 1280 (suppressing evidence in the absence of false statements where "the data presented to the judge did not allow him to decide whether the evidence of wrongdoing was itself obtained illegally and in bad faith by the officers seeking the warrant.").

The Honorable Kenneth M. Karas                    November 21, 2007
United States District Judge                      Page 3

Re:    **United States v. Huang**
       **06 Cr. 1006 (KMK)**

    <u>Reilly</u> is highly instructive here.  In <u>Reilly</u>, the police obtained a warrant authorizing a search for marijuana in and around a cottage on the defendant's property adjacent to his main residence.  In the warrant affidavit, the police stated that they had viewed numerous marijuana plants growing outdoors on the property and that they smelled a strong odor of marijuana coming from inside the cottage.  <u>Id.</u> at 1280.  The police failed to mention any details regarding whether they had intruded upon the defendant's curtilage in order to view and smell the marijuana (the Court later determined they had) and also failed to mention that one year earlier they had also walked along the property making a similar observation.  <u>Id.</u>  Upon executing the warrant, the police found 15 plants in the cottage and 115 plants in the wooded area near the cottage.  <u>Id.</u> at 1274.

    The Court affirmed the suppression of the marijuana, despite the good faith issuance of the warrant by the magistrate judge, because the information contained in the affidavit was obtained in violation of the defendant's constitutional rights.  <u>Id.</u> at 1280.  The Court ordered suppression without finding any false statements by the police; instead, it emphasized the police officers' lack of candor in the affidavit, including the failure to mention the previous search a year earlier, and the omission of information that would have allowed the magistrate judge to determine if the defendant's constitutional rights had been violated in the gathering of the information.  <u>Id.</u>  ("[T]he officers never gave Judge Barrett a full account of what they did.  And without such an account, Judge Barrett could not possibly decide whether their conduct was sufficiently illegal and in bad faith as to preclude a valid warrant.").[1]

    Here, Mr. Adoyi has set forth evidence showing that Agent Cantwil not only made a materially false statement in the affidavit attributing the manufacturing presses to Mr. Adoyi, but also that the sole remaining information in the affidavit providing probable cause to search the second floor room was misleading and obtained in violation of Mr. Adoyi's constitutional rights.

    As stated more fully in his previous briefs, Mr. Adoyi provided the agents information about the second floor room only in response to custodial interrogation that took place without a valid waiver of his Fifth Amendment rights.  (Def. Ltr. 7/13/07).  Agent Bratz admitted  that he elicited the information from Mr. Adoyi about the second floor room only after telling Mr. Adoyi

---

    [1]  <u>Reilly</u> and the present case are distinguishable from the line of cases upholding warrants based on the  "independent source" doctrine which permits the introduction of evidence initially discovered during an illegal search but later obtained through independent and untainted means.  <u>See</u>, <u>e.g.</u>, <u>Murray v. United States</u>, 487 U.S. 533 (1988).  Here, every piece of information regarding the second floor room came exclusively as a result of either a false statement or a violation of Mr. Adoyi's constitutional rights -- there was no other independent source.

The Honorable Kenneth M. Karas                    November 21, 2007
United States District Judge                      Page 4

**Re:**    **United States v. Huang**
        **06 Cr. 1006 (KMK)**

that the agents had seen him coming from the India Building in the past, that they knew he was involved in a counterfeit handbag scheme and that they wanted him to show them where the bags were located.  (June 5th Tr. 9).  On cross-examination Agent Bratz acknowledged that this was a common interrogation tactic, i.e., confronting a suspect with knowledge of evidence to get the person to speak.  (June 5th Tr. 35-36).

After Mr. Adoyi told the agents that the bags were stored next door, Agent Bratz took Mr. Adoyi in handcuffs to the India Building where Mr. Adoyi used his head to indicate which room on the second floor held the bags.  (June 5th Tr. 9).  Mr. Adoyi testified that he did not tell the agents that the bags kept in the room were counterfeit; instead, it was they who told him.  (June 20th Tr. 28-29).  After indicating the second floor door and while being led away, Mr. Adoyi saw agents attempting to open the door with keys they had earlier found on his person.  (June 20th Tr. 35).

Given the subsequent statement in Agent Cantwil's affidavit regarding the presence of manufacturing presses in the second floor room -- a fact that Mr. Adoyi never stated to the agents even according to their own testimony -- the most reasonable inference is that the officers entered the second floor room and searched it prior to the issuance of the search warrant.  This conclusion is further bolstered by the circumstances of the entire search that day: approximately 15 agents and officers combed the building for evidence in furtherance of a long-term investigation believing they had unlimited consent to search the entire premises.  Indeed, it makes no sense that the agents would not search the second floor room where they had the ability and a claimed right of authority to do so.

If this Court finds the above facts true, the evidence obtained from the second floor warrant must be suppressed.  Aside from the false statement made by Agent Cantwil regarding the presses, the only bases for the warrant's issuance were paragraphs 16 through 18 of the affidavit which were solely derived from statements elicited from Mr. Adoyi in violation of the Fifth Amendment, and a surreptitious, unconstitutional search of the room prior to the warrant's execution.  Upholding the warrant under these circumstances would turn the shield of the warrant requirement into a sword for the Government to defeat citizens' constitutional rights.  As the Second Circuit has held,

> A warrant is not a general hunting license, nor is it a mantle of omnipotence, which cloaks its holders in the King's power to 'do no wrong.'  And perhaps most important, it is not an excuse if the police are not frank with the magistrate in proceedings to obtain the warrant -- proceedings that are typically ex parte.

Reilly, 76 F.3d at 1273 citing Franks, 438 U.S. at 155-56.

The Honorable Kenneth M. Karas                     November 21, 2007
United States District Judge                       Page 5

**Re:     <u>United States v. Huang</u>**
         **06 Cr. 1006 (KMK)**

The agents here were not frank with the magistrate judge.  They did not inform the judge of the prior, illegal search of the second floor room; they included false statements to cover up the fact of that prior search; they did not inform the magistrate judge that it was they who told Mr. Adoyi that the bags stored in the second floor room were counterfeit, rather than he who told them; and they included statements elicited from Mr. Adoyi in violation of his Fifth Amendment rights.

Accordingly, the evidence obtained from the second floor room should be suppressed.

<u>**The Credibility of the Agents**</u>

Lastly, as the Government concedes, the testimony of the agents on the issue of the statements and omissions in the affidavit is relevant to their credibility more generally.  Mr. Adoyi moved to suppress evidence on four grounds: (1) that the Government failed to meet its burden of showing that Mr. Adoyi freely consented to the search of the premises of A&B Trading; (2) that Mr. Adoyi made custodial statements in response to interrogation at A&B Trading without validly waiving his Fifth Amendment rights; (3) that the affidavit in support of a search warrant for the second floor contained false and misleading statements; and (4) that the written statement prepared by Special Agent Todd Bratz and signed by Mr. Adoyi was obtained in violation of the speedy presentment rule.  (Def. Ltr. 7/13/07).

The falsehoods and omissions of the agents with respect to the warrant affidavit bear directly and significantly on their credibility and on the resolution of each of the challenges made by Mr. Adoyi.

<u>**Conclusion**</u>

The Court should proceed with a hearing in this matter and afford Mr. Adoyi the opportunity to examine any agent who has relevant information regarding the statements in the search warrant affidavit and the search of the second floor room.

Respectfully submitted,


David Patton
Attorney for Bouhari Adoyi
(212) 417-8762

cc:     Steve C. Lee, Esq.
        Assistant U.S. Attorney